United States District Court
Southern District of Texas
**ENTERED**
March 15, 2023
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS GALVESTON DIVISION

No. 3:20-369

LEONARD FARRELL WILLIS, TDCJ # 02144867, PETITIONER,

v.

BOBBY LUMPKIN, RESPONDENT.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

State inmate Leonard Farrell Willis filed a petition for a federal writ of habeas corpus under 28 U.S.C. § 2254 and seeks relief from a state conviction. The respondent filed a motion for summary judgment and a copy of the state-court records, and Willis responded. The claims are ripe for decision. Having now considered the petition, the briefing, all matters of record, and the applicable legal authorities, the court will grant summary judgment for the respondent and dismiss the petition for the reasons explained below.

## I.    BACKGROUND

### A.    Procedural Background

On June 16, 2017, Willis was convicted in the 405th District Court of Galveston County of sexual assault, enhanced, Case No. 15-CR-1465. Dkt. 23-6, at

64-68. The court sentenced Willis to 40 years. *Id.* On April 30, 2019, the Fourteenth Court of Appeals affirmed his conviction. *Willis v. State*, No. 4-17-00559-CR, 2019 WL 1941067 (Tex. App.–Hou. [14th Dist.] Apr. 30, 2019, pet. ref'd); Dkt. 23-6, at 86-102 (memorandum opinion); *id.* at 103 (mandate). On August 21, 2019, the Court of Criminal Appeals refused his petition for discretionary review. Dkt. 20-1. Willis did not file a petition for a writ of *certiorari* with the United States Supreme Court.

On November 18, 2020, through counsel, Willis filed an application for state habeas relief. Dkt. 24-2, at 4-22 (WR-72,712-04).[1] On December 7, 2020, proceeding *pro se*, he filed his petition for federal habeas relief in this court. Dkt. 1. On April 26, 2021, on the respondent's motion, the court stayed this federal habeas action pending completion of Willis's state habeas proceedings. Dkt. 8.

In a letter to the Court of Criminal Appeals dated April 26, 2021, Willis stated that he had not authorized the state petition filed by counsel on November 18, 2020, and requested a writ of mandamus. Dkt. 22-6. The Court of Criminal Appeals opened a mandamus action (WR-72,712-03), *see* Dkt. 22-4 & Dkt. 22-5, which proceeded simultaneously with the habeas action (WR-72,712-04).

On May 11, 2021, the trial court entered findings of fact and conclusions of law recommending denial of Willis's application for state habeas relief. Dkt. 24-2,

---

[1]    At the time of filing, Willis had filed two other state writs (WR-72,712-01 & WR-72,712-02) challenging prior convictions. Dkt. 21-9; Dkt. 21-10; Dkt. 22-1; Dkt. 22-2. His first two state writs are not relevant to this habeas case.

at 147-50 (WR-72,712-04). Willis then submitted a supplemental *pro se* application, which he later moved to dismiss. On June 18, 2021, the trial court issued additional findings of fact and conclusions of law dismissing Willis's supplemental application on his motion. Dkt. 23-6, at 84-85 (WR-72,712-04).

On December 8, 2021, the Court of Criminal Appeals denied Willis's habeas application without written order on the findings of the trial court without a hearing and on the court's independent review of the record. Dkt. 22-9 (WR-72,712-04). On February 2, 2022, the Court of Criminal Appeals denied Willis's motion to reinstate his supplemental application. Dkt. 23-2 (WR-72,712-04).

On December 24, 2021, Willis executed a new application for state habeas relief (WR-72,712-05). Dkt. 24-5, at 3-27. The trial count entered findings of fact and conclusions of law on January 14, 2022, recommending that the application be dismissed as subsequent under Texas Code of Criminal Procedure, article 11.07, § 4. Dkt. 24-5, at 116-18. On March 30, 2022, the Court of Criminal Appeals dismissed the application as subsequent without written order. Dkt. 24-3.

On May 16, 2022, the court granted Willis's motion to reinstate these federal proceedings and instructed the respondent to answer Willis's petition and supplemental petition. *See* Dkt. 1 (petition); Dkt. 15 (supplemental petition). The respondent then filed a copy of the state-court records and a motion for summary judgment. Dkt. 20; Dkt. 21; Dkt. 22; Dkt. 23; Dkt. 24; Dkt. 25. Willis filed a response. Dkt. 28.

### B.    <u>Factual Background</u>

#### 1.  Trial and appellate proceedings

Willis was convicted of sexual assault. The complainant was a teenager and a friend of Willis's daughter. The appellate court's opinion summarized of the assault, which occurred while the complainant was intoxicated and asleep:

> The complainant graduated from High Island High School in May, 2014. She would turn 18 later that summer. One of the complainant's friends was appellant's daughter. The complainant knew appellant as a result of the time she spent with his daughter.
>
> On June 22, 2014, appellant began texting the complainant. Appellant's first text stated: "Hey sexy." This text was sent at 9:29 p.m. The complainant had never texted appellant before, and she did not know his telephone number. In fact, when appellant's first text arrived, the complainant did not know who was texting her. Appellant then sent a second text message, asking the complainant, "Wanna come play?" The following exchange then occurred:
>
> > Complainant: "Who is this?"
> > Appellant: "It's your friend."
> > Complainant: "Who?"
> > Appellant: "You just gave me a hug in the big store yesterday."
> > Appellant: "You confused"
> > Appellant: "Any way just wanted to say hi"
> > Complainant: "A hug? In the big store? Who is this"
> > Appellant: "This is [complainant?]"
> > Complainant: "Yea?"
> > Appellant: "Is this [complainant?]"
> > Complainant: "Yea?"
> > Appellant: "This is your bff's old man"
> > Appellant: "Lol"
> > Complainant: "Oh hi lol."
> > Appellant: "Hi"
> > Appellant: "So you wanna come play"
>
> The complainant thought that this exchange was unusual because appellant was texting her, "Want to come play." Complainant was "a little grossed out" by the text messages. The complainant was not

attracted to appellant in any way.

A short time later that same evening, appellant texted the complainant again.

> Appellant: "What's up?"
> Appellant: "Wyd"
> Complainant: "I wish I could but I have to work tomorrow and it's my brother's first day."

The complainant did not have to work the next day. This was her way of refusing appellant's offer to come play with him, which she did not want to do. Appellant then texted, "Oh, ok. We'll [sic] be good. Where you working." The complainant responded with the name of a particular bar in Crystal Beach. Appellant then texted the following:

> Appellant: "I have to take my father to the heart dr tomorrow"
> Appellant: "Ok then"
> Appellant: "Night"
> Appellant: "Didn't mean no harm. Sorry."

The complainant did not respond to these final text messages.

This text message exchange frightened the complainant, so she contacted Brian, her ex-boyfriend, to help her block appellant's telephone number. The complainant texted Brian that appellant's daughter "gave my number to her dad. He keeps asking me to party with him." She showed Brian the text messages that appellant had sent to her, and Brian agreed they were inappropriate, and that the complainant should block his number. Brian blocked appellant's number from again reaching the complainant's phone.

The complainant then contacted appellant's daughter and asked if she had given appellant her telephone number. Appellant's daughter apologized for what appellant had texted to the complainant. Appellant's daughter told the complainant that appellant was sorry, and that he did not mean it. While this incident did not harm the complainant's friendship with appellant's daughter, the complainant did spend less time at appellant's residence after it occurred. On one occasion, the complainant did go to appellant's residence so that she could go swimming with appellant's daughter. On this occasion, when appellant saw the complainant, he told her that she was pretty. This made the complainant feel uncomfortable. Since appellant had

apologized for the previous texts he had sent, the complainant brushed the comment off.

Later that year, the complainant and some of her friends were attending the Rice Festival in Winnie. After attending the festival, the group travelled to a cabin in east Texas owned by the family of one member of the group. The group began drinking heavily and the complainant became very intoxicated. The complainant eventually went to the bathroom and vomited for an extended period-of-time. The complainant testified that she had never gotten this intoxicated before. It was also the first time that she got so intoxicated that she did not remember everything that had occurred. Another of the complainant's friends was helping the complainant in the bathroom when appellant's daughter got upset because she wanted to be the one to help the complainant. The two friends got into a violent fight as a result of this dispute.

After the fight, a member of the group told appellant's daughter and her boyfriend, Anthony, that they had to leave the cabin. Appellant's daughter took the intoxicated complainant with her because they were best friends. Appellant's daughter got the complainant into the back seat of her car and the complainant fell asleep. The complainant did not know where appellant's daughter was taking her, but she had assumed that they were driving to appellant's daughter's trailer as they had done in the past. But, when they reached their destination, appellant's daughter got the complainant out of the vehicle and helped her upstairs at appellant's Crystal Beach residence. Appellant's daughter told the complainant, "Shhh, my dad is sleeping. I need you to be quiet." Appellant's daughter and Anthony got the complainant into a bed in a guest room and she fell asleep. The complainant testified that she did not take her clothes off when she got into bed. The complainant remained very intoxicated.

The next thing the complainant remembered was that she woke up, her clothes were off, and appellant was on top of her. The complainant did not immediately know who was on top of her. Appellant's penis was inside the complainant's vagina. The complainant was scared, and she did not say or do anything. After appellant was finished, he went to the bathroom and returned with a wash cloth and told the complainant to wash up. By this time, the complainant realized who her attacker was, and she just wanted to get away. The complainant testified that she did not give appellant consent to enter her room nor to have sex with her. When the complainant was asked if she might

have consented as a result of the alcohol she had consumed, she responded, "No, ma'am. He was a friend's dad. That was just gross."

After tossing the wash cloth to the complainant, appellant left the room and went into another room. At that point, the complainant grabbed her clothes and put them back on. The complainant's cell phone was still in appellant's daughter's vehicle, so she went outside and then downstairs to get her phone so that she could call a friend to pick her up. When the complainant retrieved her phone, she discovered that its battery was dead. Appellant came outside at that point and asked the complainant if her phone was dead and needed to be charged. When the complainant told him yes, appellant took the phone into the kitchen and plugged it in to charge. The complainant remained outside on the porch. The complainant began smoking a cigarette and appellant came outside and said that she could smoke inside and watch television if she wished. The complainant remained outside on the porch. The complainant testified that she did not want to be in the same room with appellant.

After a while, the television went off and the complainant realized that appellant had left the living room. At that point, the complainant went back inside the house to get her phone. It was approximately 5:00 in the morning when the complainant retrieved her phone. She then walked to a nearby real estate leasing office and began calling people [to] get Brian, or someone else, to pick her up. The complainant also texted one of Brian's roommates, telling him, "please wake up and have Brian come get me please. I'm begging you. Something bad just happened."

The complainant briefly thought about calling the police, but she did not want to do that at the time because "[e]verybody on the island would hate me." The complainant "just wanted it to go away." The complainant was also scared to call the police because appellant's family was friends with one of the Galveston County Sheriff's deputies who regularly patrolled Bolivar Peninsula. Appellant's daughter often would stop and talk to this deputy when they would see him on the beach.

The complainant continued to call people. Eventually, Brian realized that his roommates' phones had been ringing repeatedly. Checking his roommate's phone, Brian discovered that the complainant had been trying to reach him. By text, Brian asked the complainant what had happened. The complainant responded, "Come get me, please." Brian

then called the complainant and told her to wait and he would be there to pick her up. Brian described the complainant as "[s]haken, anxious, real jittery, she could barely speak." The complainant waited at the real estate office for Brian. Brian and one of his roommates, Dory, eventually arrived at the real estate office. When they saw the complainant, Brian put her in his truck. The complainant "was crying really, really hard. And so I just tried to understand what she was trying to say." Brian had never seen the complainant that shaken up before. The complainant told Brian that something bad had happened, that appellant had raped her, and that she wanted Brian to take her home.

Instead of driving complainant home, Brian drove to appellant's residence to confront appellant. The complainant, who just wanted to go home, initially remained in Brian's truck when they reached appellant's residence. Brian and Dory went up to appellant's residence and repeatedly knocked on the door and windows of the residence. Appellant eventually answered the door. Brian asked appellant what had happened with the complainant, and appellant said that he did not know what Brian was talking about. A confrontation ensued between Brian and Dory on one side, and appellant, appellant's daughter, and her boyfriend Anthony on the other, with the complainant caught in the middle.

Appellant's daughter called the police. At this point, the complainant, appellant's daughter, Anthony, and appellant were all on appellant's front porch. Anthony continued to yell at Brian and Dory to get off the property. Appellant's daughter wanted the complainant to tell the police that nothing had happened. After a while during the continuing argument, the complainant eventually said, "I'll say nothing happened. Just let me leave." The complainant said this because she wanted to go home. Appellant's daughter told the complainant, "[p]lease, I'm begging you. This is my dad." The complainant tried to climb over the gate to leave the property, but appellant's daughter grabbed the complainant's hand and prevented her from leaving.

Brian called his uncle, Constable William Comeaux. When Brian told Constable Comeaux that the police had been called, Constable Comeaux told Brian that he needed to leave. After talking with Constable Comeaux, Brian told the complainant that he had to go home and that he could not wait. Brian and Dory left the residence, leaving the complainant at appellant's residence. After talking to Brian, Constable Comeaux called Deputy Robert Dodd with the

Galveston County Sheriff's Office. Constable Comeaux told Deputy Dodd that Brian had expressed concern that the complainant was being held at appellant's residence against her will.

Deputy Dodd was called to appellant's residence because of "[a] trespass of subject being on location, creating a disturbance, that had been asked to leave, that wouldn't leave." After he arrived at appellant's residence, Deputy Dodd asked where Brian was because he was the person supposedly causing the disturbance. Appellant's daughter told him that Brian had already left. Deputy Dodd testified that no one wanted to press charges against Brian. Deputy Dodd saw the complainant as well, and he observed her to be "[q]uiet, very reserved with – almost withdrawn." Based upon the officer's training and experience, the complainant was acting like other assault victims he had encountered in the past. The complainant testified during appellant's trial that she did not feel comfortable speaking with Deputy Dodd because he was a good friend of appellant and his family. The complainant testified that she did not believe Deputy Dodd would do anything to help her. As a result, she told the deputy nothing had happened, that she had called Brian, and that he had just been there to pick her up. When appellant's trial attorney asked the complainant if she was suggesting that the deputy would cover up a rape, the complainant responded, "I'm saying I was scared." After he left the scene, Deputy Dodd contacted Constable Comeaux and told him that the complainant told him that she was not being held against her will. The complainant eventually asked appellant's daughter to take her home. Appellant's daughter and Anthony then drove her home. When they dropped the complainant off, her parents were not home. While initially unsure about what to do, the complainant contacted the police that same day, and she decided to press charges against appellant. The State charged appellant with the felony offense of sexual assault.

*Willis*, 2019 WL 1941067, at *1-*4 (footnotes omitted).

At trial, Willis sought to introduce evidence that, several years earlier, the complainant alleged that a foreign exchange student had sexually assaulted her. Although Willis argued that the complainant's prior allegations were false and thus were relevant to prove her motive to lie in Willis's case, the trial court excluded the

9/43

evidence, stating that Willis had not shown that the prior allegations actually were

false. The appellate court summarized the proceedings as follows:

> During his trial, appellant sought to introduce evidence that the complainant allegedly fabricated a sexual assault claim against a foreign exchange student when she was thirteen or fourteen years old. In appellant's view, this evidence of an allegedly false prior sexual assault allegation was admissible because it established a motive to lie about having consented to sex with appellant. The trial court sustained the State's Rule 412 objection and excluded the proffered evidence. *See* TEX. R. EVID. 412. The trial court allowed appellant to make a bill-of-exception and the excluded evidence is contained in the appellate record.
>
> During the bill-of-exception hearing, the complainant testified that she told the detective investigating the sexual assault allegation against appellant that the reason she did not say no to appellant was because she had been raped in the past. The complainant told the detective that, when she was thirteen or fourteen and attending high school in Oklahoma, a foreign exchange student had raped her. The complainant told the detective that she did not tell anyone about the rape by the foreign exchange student. The complainant also told the detective that she did not say no or fight back when appellant was assaulting her because the foreign exchange student had beaten her during the prior incident. The complainant said the previous rape occurred during a party at a friend's house.
>
> The complainant also told the detective that a friend found her in a ditch on the morning after the rape. The complainant testified during the bill-of-exception hearing however, that her friend did not find her in a ditch, but that she had walked to the friend's house after she initially had fled and taken refuge in a ditch. The complainant further told the detective that she was wearing only a bra and sweatpants when her friend found her, and her friend asked her what happened. The complainant told her friend that she did not want to talk about it. Her friend acceded to that request, and no one made her speak about the incident again. When asked during the bill-of-exception hearing, the complainant agreed that she had told the investigating detective that three or four months after the Oklahoma rape, her parents made her go to counseling in lieu of medication because they thought she was depressed. During the hearing, the complainant agreed that she also told the investigating detective that she kept a diary as part of that

counseling, that her parents found the diary, and learned about the rape as a result. Finally, the complainant told the detective that, by the time her parents found her diary, the foreign exchange student had already left the country.

The complainant testified during the bill-of-exception hearing that she began seeing a counselor in response to the rape by the foreign exchange student. But, as mentioned above, the complainant also had told the investigating detective that she actually started the counseling at the request of her parents because she was depressed, not because of the rape. The complainant testified that the counselor made her keep a diary. She also testified that her parents found the diary and then learned about the rape. According to the complainant her parents wanted to press charges against the foreign exchange student, but he had already left the country.

When appellant's trial attorney suggested that the complainant's high school assailant was still in school at the time that she began her counseling, the complainant again testified that he already had left the country. But, the complainant later also testified that her assailant was still in school at that time. So, it was unclear in the complainant's bill-of-exception testimony when her high school assailant had returned to his home country. The complainant never, however, wavered in her assertion that the foreign exchange student had raped her.

In this bill-of-exception hearing, the appellant's trial attorney asked the complainant if she was Facebook friends with her high school assailant, and she responded, "[n]ot that I know of," and "I don't know if I'm still friends with him or not." When appellant's trial attorney asked her if she had "unfriended" him, she responded, "[n]ot that I remember." The complainant explained that she did not check all of her Facebook friends because she had thousands of them. When appellant's trial attorney suggested that the complainant had added her assailant as a Facebook friend perhaps even after the rape, the complainant testified, "I do not remember. At that time I just added everybody. [ ] I just used to go down and just click 'confirm' on everyone."

When appellant's trial attorney suggested that the rape of the complainant was in fact only an attempted rape because the complainant had told her counselor that the complainant had called for help and that someone came to help, interrupting the rape. The

complainant testified, "nobody came to help. My friend had walked in and asked me to put clothes on and walked out of the room. And he had went and sat on the bed while I put my clothes on and ran. I didn't even finish putting all my clothes on. My friends were all still there at the party. Appellant's attorney again suggested to the complainant that she had told her counselor that this rape was in fact only an attempted rape because the assailant was not able to get the complainant's clothes off before someone else came into the room where he was assaulting her. The complainant countered that, "my clothes were already off, sir."

During the bill-of-exception hearing, appellant argued that his offer of proof showed that the complainant had made a fabricated sexual assault claim, which he suggested was corroborated by the "fact" that the complainant remained Facebook friends with her alleged high school assailant. The trial court responded that "even the counselor in the records indicates a sexual or attempted sexual assault happening." ***The trial court continued that a "trial court is not required to admit evidence of proof of a prior false accusation when the accusation was never shown to be false to the satisfaction of the trial judge, and that hasn't been done, to me.***" Appellant's trial attorney then pointed out that appellant was also offering the testimony regarding the prior incident to prove the complainant's "motive or bias under the confrontation clause" for making the accusation against appellant. The trial court rejected this argument as well.

*Id.* at \*4-\*5 (emphasis added).

A jury convicted Willis of sexual assault and the court sentenced him to 40 years. On direct appeal, Willis raised one issue, claiming that the trial court abused its discretion when it excluded evidence of the complainant's prior allegations against the exchange student. Willis argued that the evidence "was admissible pursuant to his rights under the Confrontation Clause" and also because the evidence "demonstrate[d] the complainant's bias against him or motive to lie as allowed by Rule 412(b)(2)(C) of the Texas Rules of Evidence." *Id.* at \*6. The

appellate court overruled the issue and affirmed the judgment, determining that Willis had not demonstrated that the allegation was false or that the two incidents were "similar" or had a "logical connection." *Id.* at *7-*8. The court concluded that the trial court could reasonably have decided that the probative value of the evidence was outweighed by the danger of unfair prejudice. *Id.* at *7.

### 2. State habeas and mandamus proceedings

Willis filed one mandamus action (WR-72,712-03) and two state habeas actions (WR-72,712-04 & WR-72,712-05) that are relevant to his 2017 conviction and these federal proceedings.

On November 18, 2020, through counsel, Willis filed a state habeas application raising two grounds for relief:

1. His appellate counsel was constitutionally ineffective because he failed to:

   a. challenge evidence of the complainant's prior accusations under *Davis v. Alaska*, 415 U.S. 308 (1974), rather than Rule 412; and,

   b. raise an issue regarding the court's admission of phone calls between Willis and his daughter that were recorded when Willis was awaiting trial in the Galveston County Jail; and,

2. The prosecutors in his trial committed misconduct when they refused to identify which jail calls they intended to admit at trial "in a calculated effort to deny Mr. Willis effective assistance of counsel."

Dkt. 24-2, at 9-12 (WR-72,712-04). As instructed by the court, Willis's prior counsel submitted affidavits responding to the claims. *See id.* at 64-67 (affidavit of

appellate counsel regarding ineffective-assistance-of-appellate-counsel claims); *id*. at 78-81 (affidavit of trial counsel regarding prosecutorial-misconduct claim).

In early 2021, Willis filed multiple letters in the state courts stating that he had submitted a *pro se* application for state habeas relief that was not reflected on the docket.[2] On April 26, 2021, he drafted a letter to the Court of Criminal Appeals stating that he had not authorized the petition filed by counsel on November 18, 2020. Dkt. 22-6. The Court of Criminal Appeals then opened a mandamus action (WR-72,712-03).

On May 11, 2021, the trial court entered findings of fact and conclusions of law recommending denial of Willis's application for state habeas relief. Dkt. 24-2, at 147-50 (WR-72,712-04) (adjudicating petition filed by counsel on November 18, 2020). One day later, on May 12, 2021, the Court of Criminal Appeals instructed the trial court to respond within 30 days in the mandamus action. Dkt. 22-4; Dkt. 22-5.[3]

---

[2]    *See id*. at 68 (letter filed in trial court on Jan. 6, 2021, stated that he had sent a supplemental application on Nov. 26, 2020, but had not received confirmation or a response); *id*. at 82 (letter filed in the trial court on Mar. 26, 2021, stated that he had sent a supplemental application on Nov. 26, 2020, but had received no response); *id*. at 83 (letter filed Apr. 14, 2021, in trial court requesting information about the receipt and filing of his supplemental application sent on Nov. 26, 2020); *id*. at 84 (letter filed Apr. 27, 2021, in trial court requesting the same information); *id*. at 146 (letter dated May 4, 2021, to district clerk requesting the same information).

[3]    No subsequent proceedings in the mandamus action (WR-72,712-03) are reflected in the record before this court. However, later proceedings in Willis's habeas actions (WR-72,712-04 & WR-72,712-05) addressed the issues raised in the mandamus action, *i.e.*, whether Willis had authorized the application filed by counsel and whether he had submitted a *pro se* application for habeas relief in November 2020.

On May 18, 2021, Willis executed a supplemental *pro se* application for habeas relief that was docketed with the trial court around June 1, 2021. Dkt. 23-6, at 4-26 (WR-72,712-04). The supplemental application brought eight claims, many of which were based on Willis's contention that the prosecution had not adequately proven that the complainant did not consent to the sexual encounter:

1. the jury charge was constitutionally deficient because it did not require a unanimous verdict "as to why consent was lacking";

2. the jury charge failed to authorize Willis's conviction because the "theory of law as to why consent was lacking was not applied to the facts of the case";

3. the indictment failed to charge Willis with an offense or to invoke the trial court's jurisdiction because it did not "specifically plead why consent was lacking";

4. Willis is "actually innocent of the sentence imposed" because the indictment did not authorize punishment as a habitual offender;

5. the trial court violated Willis's constitutional rights when it excluded evidence of the complainant's prior allegations of sexual assault;

6. Willis's trial counsel were constitutionally ineffective because they:

    a. failed to subpoena and call witnesses who could have testified regarding the complainant's credibility and her propensity to allege sexual assault;

    b. failed to challenge several prosecution witnesses regarding whether they were fact or expert witnesses; and,

    c. failed to impeach complainant with her prior inconsistent statements to support the theory that the complainant had consented and no assault occurred;

7. Willis's trial counsel were constitutionally ineffective because they:

    a. failed to object to the admission of certain phone records into evidence because they were not properly authenticated and irrelevant;

    b. failed to object to the sentencing of Willis as a habitual offender;

    c. failed to object to the indictment on the grounds that it failed to properly charge a theory "as to why consent was lacking"; failed to object to the jury charge that did not require the jury "to find why consent was lacking;" and failed to object to the jury charge that did not require a unanimous verdict "as to why consent was lacking";

    d. failed to convey a 15-year plea offer to Willis; and

    e. rejected a five-year offer without consulting with Willis; and

8. Willis's appellate counsel was constitutionally ineffective because he:

    a. failed to raise an issue regarding the jury charge's failure to include instructions for the prosecution to prove "why consent was lacking";

    b. failed to raise an issue about the indictment's failure to invoke the trial court's jurisdiction because the indictment did not "contain an essential element of the offense as to why consent was lacking"; and

    c. failed to raise an issue regarding the "Texas Habitual Sentencing Scheme."

Dkt. 23-6, at 9-22.

On June 9, 2021, based on Willis's representations that he had not authorized the habeas application filed by his counsel on November 18, 2020, the

Court of Criminal Appeals remanded Willis's habeas action (WR-72,712-04) to the

trial court. Dkt. 24-1; Dkt. 23-4. The court noted that the habeas application filed

by Willis's counsel contained counsel's certification that Willis had consented to

the filing, that the record did not contain a *pro se* application filed in November

2020, and that Willis apparently wanted to proceed with both applications:

> The record indicates that an Article 11.07 habeas application
> challenging this conviction was filed by habeas counsel in the trial
> court on November 18, 2020. That application was not signed by
> Applicant himself, but includes the "Petitioner's Statement" signed by
> habeas counsel, certifying that counsel has consulted with Applicant
> and that Applicant has given consent for the filing of the application
> on his behalf. Applicant alleges that he filed an amended application
> in the trial court on November 26, 2020. Although the trial court
> entered a timely order designating issues as to the claims raised in the
> application filed by habeas counsel and subsequently entered findings
> of fact and conclusions of law addressing those claims, there is no
> indication that Applicant's amended application was received or filed
> in the trial court, or that the claims raised therein were ever addressed
> by the trial court. The amended application was not included in the
> habeas record forwarded to this Court.
>
> Based on correspondence in the record between Applicant and the
> Galveston County District Clerk's Office, it appears that Applicant
> wants his amended application to be considered. The correspondence
> also indicates that Applicant did not retain habeas counsel to file an
> application on his behalf. However, Applicant does not allege that he
> wants the application filed by habeas counsel to be disregarded;
> rather, he appears to want both applications to be considered.

Dkt. 24-1, at 1-2. The court then instructed the trial court to obtain an affidavit

from habeas counsel regarding whether Willis had consented to the filing of the

application filed by counsel and an affidavit from the clerk as to whether the *pro

se* application had been received:

> We remand this application to the trial court to obtain an affidavit from habeas counsel confirming that she consulted with Applicant regarding the filing of the habeas application, and obtained his consent to the filing of the application. In addition, the Galveston County District Clerk should submit an affidavit stating whether Applicant's amended application was ever received and filed in the district court. If the amended application was filed but not included in the habeas record, the trial court shall ensure that the habeas record is supplemented with a copy of the amended application, as well as any responses and findings of fact necessary to address the claims raised in the amended application. The trial court shall make findings of fact and conclusions of law within thirty days from the date of this order.

*Id.* at 2.

On June 14, 2021, in the trial court, the district attorney filed an answer to the supplemental *pro se* application dated May 18, 2021. The answer attached a motion from Willis, through counsel, seeking to dismiss the supplemental *pro se* application. Dkt. 23-6, at 80-81. The motion was supported by Willis's handwritten and notarized affidavit, dated June 9, 2021, in which Willis swore that he agreed to the dismissal of the supplemental *pro se* application and wished to proceed with the application filed by counsel:

> I, Leonard Farrell Willis, TDCJ # 2144867, hereby swear that I agree to move to dismiss Subsequent Writ of Habeas Corpus cause No. 15-CR-1465-83-2. I wish to proceed with my original writ, filed under cause no. 15-CR-1465-83-1 by my attorney . . . .

*Id.* at 83. Case No. 15-CR-1465-83-2 matches the case number stamped on Willis's supplemental *pro se* application dated May 18, 2021. *See id.* at 4.

On June 18, 2021, the trial court issued additional findings of fact and conclusions of law dismissing Willis's supplemental *pro se* application on Willis's

motion. *Id.* at 84-85 (WR-72,712-04). The trial court did not address the substance of Willis's eight claims, instead relying on Willis's motion seeking the dismissal and noting that the motion was "accompanied by, and supported by, an affidavit executed by [Willis]." *Id.* at 84. On July 8, 2021, the Galveston County District Clerk executed an affidavit in response to the Court of Criminal Appeals' inquiry, which stated that the district clerk's office had located a supplemental application that was filed in the trial court after entry of the trial court's recommendation on May 11, 2021, that the application had been assigned Case No. 15-CR-1465-83-2, and that it had been sent to the Court of Criminal Appeals on July 1, 2021. Dkt. 24-5, at 81.[4]

On December 8, 2021, the Court of Criminal Appeals denied Willis's habeas application without written order on the findings of the trial court without a hearing and on the court's independent review of the record. Dkt. 22-9 (WR-72,712-04). On February 2, 2022, the Court of Criminal Appeals denied Willis's motion to reinstate his supplemental application. Dkt. 23-2 (WR-72,712-04).

On December 24, 2021, Willis executed a new application for state habeas relief (WR-72,712-05). The application brought habeas claims that were identical or substantially similar to the claims in the supplemental *pro se* petition Willis had

---

[4]    The case number on the supplemental *pro se* application located by the Galveston County District Clerk matches the case number on Willis's supplemental *pro se* application dated May 18, 2021. Dkt. 23-6, at 4. The record before this court contains no indication that an earlier *pro se* application, which Willis states he mailed on Nov. 26, 2020, was ever received or docketed by the state courts.

agreed to dismiss on June 9, 2021. *See* Dkt. 24-5, at 3-27 (application dated December 24, 2021); Dkt. 23-6, at 9-22 (supplemental *pro se* application dated May 18, 2021). The Court of Criminal appeals dismissed the application as subsequent on March 20, 2022. Dkt. 24-3 (WR-72,712-05).

### 3. Federal habeas proceedings

Willis initiated this federal habeas action on December 7, 2020, while his state habeas proceedings (WR-72,712-04) were pending. His initial petition raises seven claims:

1. the jury charge was constitutionally deficient because it did not require the jury to reach a unanimous verdict "as to why consent was lacking";

2. the jury charge failed to authorize Willis's conviction because the "theory of law as to why consent was lacking was not applied to the facts of the case";

3. the indictment failed to charge Willis with an offense or to invoke the trial court's jurisdiction because it did not "specifically plead why consent was lacking";

4. Willis is "actually innocent of the sentence imposed" because the indictment did not authorize punishment as a habitual offender;

5. the trial court violated Willis's constitutional rights when it excluded evidence of the complainant's prior allegations of sexual assault;

6.[5] his trial counsel were constitutionally ineffective because counsel:

---

[5]   Willis's federal petition numbers these claims as Claim 6(1) through 6(8), but skips Claim 6(3). Dkt. 1, at 13-15. For clarity, the court will refer to the claims as Claims 6(a) through 6(g).

a.   failed to subpoena and call witnesses who could have testified regarding the complainant's credibility and her propensity to allege sexual assault;

b.   failed to challenge several prosecution witnesses regarding whether they were fact or expert witnesses;

c.   failed to impeach complainant with her prior inconsistent statements to support the theory that the complainant had consented and no assault occurred;

d.   failed to object to the admission of certain phone records into evidence because they were not properly authenticated and irrelevant;

e.   failed to object to the trial court's sentencing of Willis as a habitual offender;

f.   failed to object to the indictment on the grounds that it failed to properly charge a theory "as to why consent was lacking;" failed to object to the jury charge that did not require the jury "to find why consent was lacking;" and failed to object to the jury charge that did not require a unanimous verdict "as to why consent was lacking";

g.   failed to convey to Willis a 15-year plea offer and rejected a five-year offer without consulting with Willis; and,

7.[6]   His appellate counsel was constitutionally ineffective because counsel:

a.   failed to raise an issue regarding the jury charge's failure to include instructions for the prosecution to prove "why consent was lacking";

b.   failed to raise an issue about the indictment's failure to invoke the trial court's jurisdiction because the indictment did not "contain an essential element of the offense as to why consent was lacking"; and,

---

[6]   Willis's federal petition includes these claims in Claim 6 but does not number the three sub-claims. *Id.* at 15-16. For clarity, the court will refer to his ineffective-assistance-of-appellate-counsel claims as Claim 7(a)-7(c).

      c.      failed to raise an issue regarding the Texas Habitual Sentencing Scheme.

Dkt. 1, at 8-16. These claims are identical or substantially similar to claims Willis raised in his supplemental *pro se* state application, which the court later dismissed on Willis's motion.[7]

This court entered an order for the respondent to answer and, because state habeas proceedings were ongoing, granted the respondent's motion to stay federal habeas proceedings. Dkt. 8. After the state proceedings concluded, Willis filed a request to reinstate these proceedings and a supplemental federal petition raising two additional grounds for habeas relief. Because the first claim in his supplemental federal petition is an ineffective-assistance-of-appellate-counsel claim, the court will consider its sub-claims as part of Claim 7:

      7.      His appellate counsel was constitutionally ineffective because:

      d.      counsel should have challenged evidence of the complainant's prior accusations under *Davis v. Alaska*, 415 U.S. 308 (1974), rather than Rule 412; and,

      e.      counsel failed to raise issues on appeal regarding evidence of calls between Willis and his daughter that were recorded when Willis was in the Galveston County Jail awaiting trial; and,

---

[7]      Claims 1-5 in Willis's federal petition are identical or substantially similar to Claims 1-5 in his supplemental *pro se* state application. *See* Dkt. 23-6, at 9-17. Claim 6 in his federal petition is identical or substantially similar to Claims 6 and 7 in his supplemental *pro se* state application. *See id.* at 19-21. Claims 7(a)-7(c) in his federal petition are identical or substantially similar to Claim 8 in his supplemental *pro se* state application. *See id.* at 22.

8. Prosecutors at his trial committed misconduct when they refused to identify which jail calls they intended to admit at trial "in a calculated effort to deny Mr. Willis effective assistance of counsel."

Dkt. 15, at 3-6. The claims in Willis's supplemental federal petition are identical or substantially similar to his claims in the state habeas application filed by habeas counsel on November 18, 2020, *see* Dkt. 24-2, at 9-12, which the state courts decided on the merits.

On May 16, 2022, the court reinstated the case and instructed the respondent to answer. The respondent then filed a motion for summary judgment and a copy of the state-court records, and Willis responded. Along with his response, Willis filed declarations from himself and another inmate regarding his supplemental *pro se* state habeas application. Dkt. 28, at 35-38. Both declarations are dated October 7, 2022, and state that Willis never intended to dismiss the claims in his supplemental application. They also state that Willis's state habeas counsel incorrectly advised him that the application was a subsequent application, and thus subject to dismissal, under state law.[8]

---

[8]    *See id.* at 35-36 (declaration by Willis states that he had submitted the supplemental application to prison officials for mailing on Nov. 26, 2020, but that the court did not receive a supplemental application until June 6, 2021, after he had mailed another; that it was "never [his] intention[] to dismiss any claims [that] need to be presented to the State court for exhaustion purposes;" and that he believes that his state habeas counsel was "in collaboration with the District Attorney's office . . . to induce [him] to have and/or agree to the dismissal of the application" because his counsel should have known that his application was not subsequent); *id.* at 37-38 (declaration from inmate Kirk Wayne McBride states that he assisted Willis with the supplemental state habeas application, that "it was never Mr. Willis's intention[]" to have his application dismissed, and that Willis received "erroneous advi[c]e" from state habeas counsel who told Willis that the supplemental application was a subsequent application).

## II.   LEGAL STANDARDS

### A.   *Pro Se* Pleadings

Federal courts do not hold *pro se* habeas petitions "to the same stringent and rigorous standards as . . . pleadings filed by lawyers." *Hernandez v. Thaler*, 630 F.3d 420, 426 (5th Cir. 2011) (cleaned up). "The filings of a federal habeas petitioner who is proceeding *pro se* are entitled to the benefit of liberal construction." *Id.*

### B.   The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas corpus relief is governed by the applicable provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See Woodford v. Garceau*, 538 U.S. 202, 205-08 (2003); *Lindh v. Murphy*, 521 U.S. 320, 335-36 (1997). Under AEDPA, federal habeas relief based upon claims that were adjudicated on the merits by the state courts cannot be granted unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 7-8 (2002); *Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012).

Federal courts look to the "last reasoned opinion" as the state court's "decision." *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991); *see Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012).

"Where a state court's decision is unaccompanied by an explanation," and the lower courts did not issue a reasoned opinion, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011); *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding that there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

Review under AEDPA is "highly deferential" to the state court's decision. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). To merit relief under AEDPA, a petitioner may not merely show legal error in the state court's "decision." *White v. Woodall*, 572 U.S. 415, 419 (2014) (stating being "merely wrong" or in "clear error" will not suffice federal relief under AEDPA). AEDPA review exists only to "guard against extreme malfunctions in the state criminal justice systems." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up). "[F]ocus[ing] on what a state court knew and did," *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), AEDPA requires inmates to "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woodall*, 572 U.S. at 419-20 (quoting *Richter*, 562 U.S. at 103). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

For questions of law or mixed questions of law and fact adjudicated on the

merits in state court, this court may grant habeas relief under 28 U.S.C. § 2254(d)(1) only if the state-court decision "was contrary to, or involved an unreasonable application of, clearly established" Supreme Court precedent. *See Kittelson v. Dretke*, 426 F.3d 306, 318 (5th Cir. 2005). Under the "contrary to" clause, this court may afford habeas relief if the state court "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015) (cleaned up). To constitute an "unreasonable application" of clearly established federal law, the state court's determination "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods*, 575 U.S. at 316 (cleaned up).

On factual issues, AEDPA precludes federal habeas relief unless the state court's adjudication of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state[-]court proceeding." *See* 28 U.S.C. § 2254(d)(2); *Martinez v. Caldwell*, 644 F.3d 238, 241-42 (5th Cir. 2011).

## C. <u>Summary-Judgment Standard</u>

In ordinary civil cases, a district court considering a motion for summary judgment is required to construe the facts of the case in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus

cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). However, AEDPA modifies summary-judgment principles in the habeas context, and Rule 56 "applies only to the extent that it does not conflict with the habeas rules." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004); *see Torres v. Thaler*, 395 F. App'x 101, 106 n.17 (5th Cir. 2010). "Therefore, § 2254(e)(1)—which mandates that findings of fact made by a state court are presumed to be correct—overrides the ordinary summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmoving party." *Smith*, 311 F.3d at 668.

## III.  DISCUSSION

Willis's petition and supplemental petition bring eight claims for federal habeas relief. The respondent argues in his summary-judgment motion that Claims 1, 2, 3, 4, 6, and 7(a)-7(c) are unexhausted and procedurally defaulted, and that Claims 5, 7(d)-7(e), and 8 fail on the merits.

### A.  Exhaustion and Procedural Default

The respondent argues that Claims 1, 2, 3, 4, 6, and 7(a)-7(c) should be dismissed as unexhausted and procedurally defaulted because Willis did not fairly present the substance of his claims to the state court.

Under the exhaustion doctrine, AEDPA precludes federal relief on constitutional challenges that an inmate has raised for the first time in federal court. *See* 28 U.S.C. § 2254(b)(1). To comply with exhaustion, a petitioner must "fairly present his legal claim to the highest state court in a procedurally proper

manner." *Nickleson v. Stephens*, 803 F.3d 748, 753 (5th Cir. 2015) (cleaned up); *see Jones v. Dretke*, 375 F.3d 352, 354-55 (5th Cir. 2004). The federal claim "must be the substantial equivalent of the claim brought before the State court." *Young v. Davis*, 835 F.3d 520, 525 (5th Cir. 2016) (cleaned up); *see Lucio v. Lumpkin*, 987 F.3d 451, 464 (5th Cir. 2021) ("a state prisoner who does not fairly present a claim to a state habeas court—specifying both the legal and factual basis for the claim—may not raise that claim in a subsequent federal proceeding").

As a corollary to exhaustion, the federal procedural-default doctrine requires inmates to litigate claims in compliance with state procedural law. *See Dretke v. Haley*, 541 U.S. 386, 392 (2004); *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). If a petitioner with an unexhausted claim would be barred from returning to state court by Texas' abuse-of-the-writ doctrine, TEX. CODE CRIM. PROC. art. 11.07 § 4, the claim is barred under the federal procedural-default doctrine. *Young*, 835 F.3d at 525; *Nobles v. Johnson*, 127 F.3d 409 (5th Cir. 1997). To overcome the default and obtain federal habeas review, a petitioner must demonstrate either "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that "failure to consider the claims will result in a fundamental miscarriage of justice." *Williams v. Thaler*, 602 F.3d 291, 307 (5th Cir. 2010) (cleaned up). The fundamental-miscarriage-of-justice exception to procedural default is limited to cases in which a petitioner demonstrates that a constitutional violation has probably resulted in the conviction of one who is actually innocent. *Garza v. Stephens*, 738 F.3d 669, 675 n.3 (5th Cir. 2013);

*Hughes v. Quarterman*, 530 F.3d 336, 341-42 (5th Cir. 2008).

In this case, Willis raised Claims 1, 2, 3, 4, 6, and 7(a)-7(c) in his supplemental *pro se* application, which was docketed in the trial court after the court entered its first findings of fact and conclusions of law. *See* Dkt. 23-6, at 9-22 (Claims 1-4 & 6-8 in supplemental *pro se* state application). The trial court did not reach the merits of the claims, but rather dismissed them on Willis's motion, which was supported by Willis's handwritten affidavit stating that he agreed to the dismissal. *See id*. at 80-81 (motion); *id*. at 83 (affidavit); *id*. at 84-85 (findings of fact and conclusions of law). The Court of Criminal Appeals then denied the writ without written order on the findings of the trial court and on the court's independent review of the record. Dkt. 22-9. Therefore, Willis did not fairly present the substance of his claims to the state courts and give the state courts the opportunity to correct the alleged violations of his rights. *See Jones*, 375 F.3d at 354-55 (the presentation requirement gives state courts "an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights") (cleaned up) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). His claim is unexhausted. *See Nickleson*, 803 F.3d at 753.

If Willis returned to the state courts now to exhaust his claims, they would be barred. In fact, when Willis filed a state habeas application in December 2021, which included the unexhausted claims he brings in this court, the Court of Criminal Appeals dismissed the application as subsequent. Dkt. 24-3 (citing TEX. CODE. CRIM. PROC. art. 11.07, § 4). His claims therefore are barred under the

procedural-default doctrine. *See Young*, 835 F.3d at 525.

Willis argues that he had "cause" for the default because he dismissed his state habeas claims in reliance on his habeas counsel's erroneous advice. Dkt. 28, at 13-15. Under *Coleman*, an attorney's negligence in habeas proceedings does not establish cause for default; rather, an attorney is the prisoner's agent, and the prisoner bears the risk of the attorney's negligent conduct. *Coleman*, 501 U.S. at 753-54. Under this principle, cause for a procedural default exists only "where something *external* to the petitioner, something that cannot fairly be attributed to him, impeded his efforts to comply with the State's procedural rule." *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (cleaned up) (emphasis original). In 2012, the Supreme Court allowed a limited qualification to *Coleman* for ineffective-assistance-of-trial-counsel claims that the petitioner is otherwise unable to present for habeas review due to constitutionally ineffective counsel in state habeas proceedings. *Martinez v. Ryan*, 566 U.S. 1, 12 (2012). Under *Martinez*, if a habeas petitioner can show that his state habeas counsel was constitutionally ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), the showing can suffice as cause for the default of ineffective-assistance-of-trial-counsel claims. *Martinez*, 566 U.S. at 14.

Here, Willis argues that his state habeas counsel gave him erroneous advice regarding the motion to dismiss his supplemental *pro se* application. In particular, he claims that his habeas counsel incorrectly informed him that the claims in his supplemental *pro se* application would be a subsequent application under Texas

Code of Criminal Procedure, art. 11.07, § 4. Dkt. 28, at 14. He further states that,

when he agreed to the dismissal, he intended to proceed with his writ filed on

November 26, 2020, *i.e.*, the writ that was never docketed in the state courts. *Id.*

at 7. His declaration, dated October 7, 2022, states that he was "under the

impression" that his prior, unfiled application could proceed once it was located:

> I was under the impression that by agreeing to dismiss [the
> application dated May 18, 2021], it would not have a bearing on the
> application that I tendered on November 26, 2020, because [the
> application tendered on November 26, 2020] was considered filed at
> the time that I handed it to prison officials[] for mailing . . . [and] all
> [that] was needed was to track it down and see if it was filed with a
> different court. I state that it was never my intention[] to dismiss any
> claims [that need] to be presented to the State court for exhaustion
> purposes so that they could be heard by the federal court.

Dkt. 28, at 35-36.

Willis's filings in this court clearly state that he personally agreed to dismiss

his supplemental *pro se* application. His affidavit in state habeas proceedings also

unequivocally stated that he agreed to dismiss the application. Dkt. 23-6, at 83.

Although he now claims that, when he agreed to the dismissal, he believed he

would be able to continue with his unfiled petition at a later time, his filings in state

court made no mention of proceeding with an undocketed *pro se* application.

Rather, his affidavit at the time of the dismissal stated that he "wish[ed] to proceed

with [his] original writ, filed under cause no. 15-CR-1465-83-1 by [his] attorney."

*Id. See also* Dkt. 24-5, at 3-27 (habeas application filed on Dec. 30, 2021, did not

refer to the undocketed petition) (WR-72,712-05); Dkt. 23-2 (motion to reinstate

dated Jan. 12, 2022, did not refer to the undocketed petition) (WR-72,712-04).

In light of Willis's statements in this court and his affidavit filed in state habeas proceedings in June 2021, he fails to show that his effort to present the substance of his claims to the state habeas court was impeded by something "external. . . that cannot fairly be attributed to him." *See Maples*, 565 U.S. at 280. Even assuming that Willis could prove that his habeas counsel was negligent, the showing would be insufficient to demonstrate cause for his default. *Id*. Additionally, to the extent he argues that his habeas counsel was ineffective and rendered him unable to present his ineffective-assistance-of-trial-counsel claims to the state habeas court for review, *see Martinez*, 566 U.S. at 12-14, he fails to sufficiently show that his counsel was deficient or that he was prejudiced under *Strickland* standards. He therefore has not shown that cause to overcome the default of his claims.

Willis also fails to demonstrate a fundamental miscarriage of justice. He claims that he is actually innocent and entitled to merits review of his claims because he was not "legally eligible for the sentence imposed" against him, Dkt. 28, at 16, arguing that his sentence was wrongly enhanced based on prior offenses. *See id*. at 20-21. He cites to the exception in Texas Code of Criminal Procedure, article 11.07, § 4(a)(2), which provides that a subsequent writ may be considered if the application "contains sufficient specific facts establishing that . . . by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt."

To the extent Willis relies on Texas Code of Criminal Procedure art. 11.07,

§ 4, for his arguments regarding a fundamental miscarriage of justice, the Court of Criminal Appeals squarely rejected his arguments. Willis presented his claims to the state courts in his petition executed on December 24, 2021, including his claim that he is "actually innocent of the sentence" imposed. *See* Dkt. 24-5 at 3-27 (WR-72,712-05). The Court of Criminal Appeals rejected this claim under article 11.07, § 4, and dismissed the application as subsequent. Dkt. 24-3. In this court, Willis's arguments grounded in state law cannot provide a basis for federal habeas relief. *See* 28 U.S.C. § 2254(a) (a federal court shall entertain a habeas petition from a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States").[9]

To the extent Willis here relies on actual innocence as a gateway to present otherwise-barred claims to in federal court, his argument would require "new evidence" and a showing that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013); *see Floyd v. Vannoy*, 894 F.3d 143, 155 (5th Cir. 2018) (to be credible, claims of actual innocence require "new reliable evidence") (cleaned up). Because Willis has not presented any new evidence in these proceedings that he was innocent of sexual assault, his argument that he suffered a fundamental miscarriage of justice is unavailing.

---

[9]    Similarly, to the extent Willis argues that federal habeas relief is warranted because the state courts failed to comply with state procedural law, *see* Dkt. 28, at 2-5, his argument fails under 28 U.S.C. § 2254(a).

Because Willis's claims are unexhausted and defaulted, federal habeas relief is unavailable and Claims 1, 2, 3, 4, 6, and 7(a)-7(c) will be dismissed.

## B.    **Fundamental Fairness**

Willis claims in Claim 5 that the trial court violated his constitutional rights under the Sixth and Fourteenth Amendments when it excluded evidence of the complainant's prior allegations of sexual assault. He argues that the evidence was relevant to the issue of whether the complainant had consented to sex and to her motive to lie, that it was admissible under the Confrontation Clause, and that the trial court violated his due-process rights when it excluded the evidence. Dkt. 1, at 12; Dkt. 28, at 29-32.

The Fourteenth Amendment's Due Process Clause protects a state defendant's right to a fundamentally fair trial. *Rogers v. Lynaugh*, 848 F.2d 606, 608 (5th Cir. 1988) (citing, *inter alia*, *Darden v. Wainwright* 477 U.S. 168, 181 (1986)); *Kirkpatrick v. Blackburn*, 777 F.2d 272, 278 (5th Cir. 1985) (citing, *inter alia*, *United States v. Bagley*, 473 U.S. 667 (1985)). On habeas review, a petitioner bringing a claim based on a trial court's error must show prejudice by demonstrating that the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (cleaned up). The Sixth Amendment's Confrontation Clause guarantees criminal defendants the right to confront witnesses against them. *Crawford v. Washington*, 541 U.S. 36 (2004); *Dorsey v. Stephens*, 720 F.3d 309, 317 (5th Cir. 2013).

At his trial, Willis sought to introduce evidence that the complainant was

motivated to lie, relying on his contention that she previously had made false assault accusations against an exchange student. The trial court excluded the evidence and the appellate court affirmed, holding that Willis "did not meet his burden to demonstrate the evidence was admissible under either [Texas Rule of Evidence] 412 or the Confrontation Clause" because he had not demonstrated that the complainant's prior allegation actually was false or that a "logical connection" between the events could reveal that the complainant was motivated to lie. *Willis* 2019 WL 1941067 at *7. Because Willis did not raise this claim on state habeas review, the appellate court's decision is the "last reasoned opinion" from the state courts regarding Willis's claim of fundamental fairness, and thus is due deference under AEDPA. *See Ylst*, 501 U.S. at 803.

In this court, Willis does not meaningfully address the appellate court's conclusion that he failed to show that the complainant's prior accusations were actually false or were related to her accusations against him.[10] He thus fails to demonstrate that he was denied a fundamentally fair trial. He also fails to show that the appellate court's denial of his claim was contrary to clearly established law or unreasonable under 28 U.S.C. § 2254(d).

---

[10]    Although Willis argues in his briefing that the appellate court failed to consider his claim under *Davis v. Alaska*, 415 U.S. 308 (1974), he did not bring a *Davis* claim in the appellate court. In fact, in these proceedings, Willis brings an ineffective-assistance-of-appellate-counsel claim based on counsel's failure to raise a claim under *Davis*. This claim is addressed below as Claim 7(d).

### C.    <u>Ineffective Assistance of Appellate Counsel</u>

Willis claims in Claims 7(d) and 7(e) that his appellate counsel was constitutionally ineffective. A criminal defendant is entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Dorsey*, 720 F.3d at 319-21. Claims of ineffective assistance of counsel on appeal are governed by *Strickland*, which requires a petitioner to show that counsel's performance was deficient and that the petitioner was prejudiced. *Id.* at 319. The court's review under *Strickland* is "highly deferential," and "doubly deferential" on habeas review when the standards of § 2254(d) apply. *Richter*, 562 U.S. at 105. A habeas petitioner must overcome "a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Higgins v. Cain*, 720 F.3d 255, 265 (5th Cir. 2013) (cleaned up). Moreover, appellate counsel is not required to "raise every nonfrivolous ground of appeal available." *Dorsey*, 720 F.3d at 320 (cleaned up). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). Effective advocates "'winnow[] out weaker arguments on appeal'" and focus on key issues. *Higgins*, 720 F.3d at 265 n.41.

#### 1.    Claim 7(d)

In Claim 7(d), Willis alleges that his appellate counsel was ineffective when he failed to argue under *Davis v. Alaska*, 415 U.S. 308 (1974), that the complainant's past allegation of sexual assault by an exchange student should have

been admitted into evidence. Dkt. 15, at 3 (arguing that his counsel erred by bringing the claim under Texas Rule of Evidence 412 rather than *Davis*). In *Davis*, a criminal defendant sought to use cross-examination to impeach the credibility of a prosecution witness by questioning the witness about possible bias deriving from his probationary status as a juvenile delinquent. The trial court entered a protective order based on a state statute, preventing the defense from referring to the witness's juvenile record on cross. The Supreme Court reversed Davis's conviction, holding that the limited cross-examination violated the Confrontation Clause. *Davis*, 415 U.S. at 320-21. The court noted that the witness's "accuracy and truthfulness . . . were key elements in the State's case against [Davis]" and that the defense's evidence of bias "was admissible." *Id*. at 317-18.

Willis raised this claim in state habeas proceedings. His appellate counsel submitted an affidavit explaining that he did not raise a claim under *Davis* because *Davis* had limited application in Willis's case. Counsel opined that, while *Davis* was "generally applicable" regarding Willis's "right to confront the victim as provided by the Confrontation Clause, "it did not specifically apply to "the subject matter of [Willis's] attempted cross examination." Dkt. 24-2, at 65. The state habeas court determined that counsel's affidavit was "credible," that he is "a well-qualified and experienced appellate attorney," and that counsel "adequately briefed and appealed [the] confrontation clause and Rule 412 point of error." *Id*. at 147, 149. It concluded that Willis had not proven by a preponderance of the evidence that counsel's representation "fell below an objectively reasonable

standard" nor that, "but for the complained of errors in [counsel's] representation, [Willis] would have prevailed on direct appeal." *Id*. at 148-49.

In these federal proceedings, Willis claims that his counsel's affidavit and the state court's decision are contrary to *Davis* and that relief under § 2254(d) is justified. *See* Dkt. 28, at 25-26 ("the *Davis* case is very specific as to the subject matter of the attempted cross examination of the alleged victim[] in this case that excluded [sic] by the trial court"). His assertion does not satisfy his burden to show that his appellate counsel's performance was deficient under *Strickland* standards. *See Dorsey*, 720 F.3d at 319-20.[11] The state habeas court rejected his claim and, in this proceeding, Willis does not show that the state court's determination was contrary to clearly established law or unreasonable under § 2254(d).

## 2. Claim 7(e)

In Claim 7(e), Willis argues that his appellate counsel failed to argue that recorded calls between Willis and his daughter should have been excluded from evidence. Willis alleges that the trial court admitted the calls, which were recorded when he was a pretrial detainee in the Galveston County Jail, without adequate

---

[11]    The court notes that, in Willis's case, the state courts determined that the evidence was properly excluded because it had little or no probative value or that any value was outweighed by the danger of unfair prejudice. *Willis*, 2019 WL 1941067, at *7. By contrast, in *Davis*, the Supreme Court stated that the cross-examination at issue was relevant and admissible. *Davis*, 415 U.S. at 317-18; *see United States v. Herman*, 997 F.3d 251, 272-73 (5th Cir. 2021), *cert. denied,* 142 S. Ct. 787 (2022) (trial court's limitations on the defense's cross-examination of the prosecution's witnesses did not violate the Confrontation Clause because the trial court properly excluded evidence that was marginally relevant or concerned unrelated conduct).

notice to the defense, and that the calls "contained evidence of extraneous bad acts, *i.e.*, witness tampering and suborning perjury." Dkt. 15, at 4. Counsel's affidavit in state habeas proceedings stated that he "did not raise this argument on appeal because [he] did not think it was well enough developed in the trial court." Dkt. 24-2, at 66. Counsel also noted that Willis had not provided specific details as to why the argument should have been raised. *Id.* at 66-67. The state habeas court rejected Willis's claim, concluding that counsel's "decision not to brief the jail call point of error relating to the admission of [the recorded calls] was a reasonable appellate strategy based on [counsel's] extensive legal experience." *Id.* at 149.

Willis argues in this court that his appellate counsel's argument is inadequate to show that the claim was insufficiently developed in the trial court. Dkt. 28, at 27. However, Willis bears the burden of proof to demonstrate that his counsel was ineffective under *Strickland* standards. *See Dorsey*, 720 F.3d at 319-20. His arguments fail to satisfy his burden to show that appellate counsel rendered deficient performance or prejudiced him when he selected the issues for appeal. They also fail to demonstrate that the state habeas court's denial of relief was contrary to clearly established law or unreasonable under § 2254.

### D.    **Prosecutorial Misconduct**

Willis claims in Claim 8 that the prosecutors at his trial committed misconduct. On federal habeas review, a claim for prosecutorial misconduct requires a showing that the misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden*, 477 U.S. at 181

(cleaned up); *see Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000). Habeas relief is only available if the trial was rendered "fundamentally unfair," which requires a showing of "a reasonable probability that the verdict might have been different had the trial been properly conducted." *McAfee v. Thaler*, 630 F.3d 383, 396-97 (5th Cir. 2011) (cleaned up). "The appropriate standard of review for such a claim on writ of habeas corpus is the narrow one of due process, and not the broad exercise of supervisory power." *Barrientes*, 221 F.3d at 753 (cleaned up).

Here, Willis claims that his constitutional rights were violated when the prosecution failed to provide proper notice of the particular recorded jail calls it would seek to admit at trial. He alleges that the prosecution "made [a] massive disclosure of jail calls in January of 2017, still refusing to identify which it intended to admit at trial," in a "calculated effort to deny [Willis] effective assistance of counsel." Dkt. 15, at 5.[12]

The state habeas court determined that the exhibits with the relevant phone calls were provided to the defense "during the normal course of pre-trial discovery on July 7, 2016;" that the prosecutors did not decide to seek introduction of the exhibits "until, at the earliest, the evening of June 15, 2017;" and that the prosecutors informed the defense of their intent to seek introduction of the

---

[12]    Willis describes the calls as "between Mr. Willis and his daughter, complainant's friend." *Id*. at 6. He states that, in the calls, "Mr. Willis is heard asking his daughter to have complainant sign an affidavit," that "Mr. Willis's daughter can be heard suggesting that she might get the complainant drunk first, or misrepresent what the document actually was," and that "Mr. Willis can be heard agreeing with the strategy on the phone." *Id*.

exhibits on the morning of June 16, 2017. Dkt. 24-2, at 147-48. The habeas court further found that the trial court granted the defense a continuance to rebut the evidence, but that Willis's counsel "decided to move forward with trial without taking the continuance." *Id.* at 148. The court concluded that the prosecutors did not commit prosecutorial misconduct, that the decision to seek introduction of the calls "was not done with a calculated effort to frustrate or harm the defense," and that the prosecution "was not required to give [Willis] any Rule 404(b) notice" for the recorded phone calls "because they were offered to rebut the defensive theory of consent." *Id.* at 149.

The state habeas court's ruling included specific determinations that the prosecution had not committed misconduct and that Willis had declined the opportunity for a continuance. In these habeas proceedings, Willis's assertion that prosecutors deliberately attempted to thwart the defense is insufficient to demonstrate prosecutorial misconduct. Willis also has not shown that that state habeas court's determination was contrary to, or an unreasonable application of, clearly established federal law, or that it was based on an unreasonable determination of the facts in light of the evidence presented in state-court proceedings. *See* 28 U.S.C. § 2254(d).

## IV. **CERTIFICATE OF APPEALABILITY**

Habeas corpus actions for a person in state custody require a certificate of appealability to proceed on appeal. 28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 of the Rules Governing Section 2254 Cases

requires a district court to issue or deny a certificate of appealability when entering a final order adverse to the petitioner.

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to establish "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (cleaned up). Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling" but also that the jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right." *Slack*, 529 U.S. at 484; *see Pierre v. Hooper*, 51 F.4th 135, 137 (5th Cir. 2022) (a certificate of appealability may not issue based solely on a debatable procedural ruling).

A district court may deny a certificate of appealability, sua sponte, without requiring more briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the record and the applicable law, the court determines that reasonable jurists would not find its assessment of the claims

debatable or wrong. Because the petitioner does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

**V.    CONCLUSION**

For the reasons stated above, the respondent's motion for summary judgment is **GRANTED**. Dkt. 25. Willis's habeas claims are denied and his petition is **DISMISSED with prejudice**. A certificate of appealability is **DENIED**.

The Clerk will provide copies of this order to the parties.

Signed on Galveston Island this _15th_ day of __March_____, 2023.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE

43/43